UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CORDERRO JAVON JONES, :
                Plaintiff, :
                                : **OPINION AND ORDER**
v. :
                                : 20 CV 3485 (VB)
LT. FALCO and SGT. CARR, :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Corderro Javon Jones, proceeding pro se,[1] brings this Section 1983 action against defendants Lt. Falco and Sgt. Carr. Plaintiff alleges that, on May 17, 2017, when he was incarcerated at Rockland County Correction Center ("RCCC") awaiting sentencing after a guilty plea, he was subjected to an unreasonable search in violation of the Fourth Amendment and pepper sprayed by Lt. Falco in violation of the Eighth Amendment.

       Now pending is defendants' motion for summary judgment. Defendants seek to dismiss the complaint in its entirety. (Doc. #32).

       For the following reasons, the motion is DENIED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

       Defendants submitted briefs, a statement of undisputed material facts pursuant to Local Civil Rule 56.1; a declaration with exhibits, including seven video recordings from RCCC taken

---

[1]     Plaintiff paid the filing fee to commence this action. (Doc. #1).

the day of the incident; and two affidavits by experts. Plaintiff submitted briefs and affidavits with exhibits.[2] Together, they reflect the following factual background.

On May 17, 2017, plaintiff was incarcerated at RCCC following a guilty plea in Rockland County Court and awaiting sentencing. (Doc. #33-17 at ECF 4).[3] This case arises from a series of body searches of plaintiff conducted that day by correction officers at RCCC: first in his cell, then in the showers in the intake area of the facility, then in a holding cell.

RCCC staff decided to search plaintiff and his cell based on a tip that plaintiff possessed synthetic marijuana and was potentially hiding it in his rectum. (See Doc. #33-3 at ECF 40). The search team included defendant Lt. Falco, as well as nonparties Sgt. Leath, Officer Orbacz, and Officer Levine. (Id.).

First, the officers escorted plaintiff to his cell and Officer Levine began the search of plaintiff. (Doc. #33-3 at ECF 40). Sgt. Leath and another nonparty officer, Officer Ruckel, searched plaintiff's cell. (Id.).

According to defendants, plaintiff initially refused to comply with the officers' instructions, but after twenty-five minutes of back-and-forth with the officers, plaintiff undressed and bent over. (Doc. #33-3 at ECF 17, 40; Doc. #33-13 ("Pl. Dep."), at 20). Defendants contend Lt. Falco ordered plaintiff multiple times to comply with the instruction to spread his buttocks,

---

[2] Plaintiff did not submit a counterstatement of material facts as required by Local Civil Rule 56.1. However, in light of plaintiff's pro se status, the Court has independently reviewed the factual record with respect to each of the statements of material fact set forth by defendants. Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.").

[3] "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

but plaintiff refused to comply for an additional twenty minutes and instead was clenching his buttocks. (Doc. #33-3 at ECF 12). Defendants contend Officer Levine "remain[ed] professional and g[ave] [plaintiff] clear, concise directives" throughout the search. (Id. at ECF 40). In support of their account, defendants cite to contemporaneous reports written by Lt. Falco, Officer Orbacz, and Officer Levine, and plaintiff's deposition testimony.

According to plaintiff's deposition testimony, the officers demanded he undress without telling him the reason and threatened him repeatedly with pepper spray. (Pl. Dep. at 18–22). Plaintiff testified he promptly undressed in response to Lt. Falco's orders and that he was not clenching his buttocks. (Id. at 21–22). He also testified he felt "humiliated and harassed" by the search. (Id. at 31; accord Doc. #49 at ECF 6 ("Defendants could have used a different approach. But instead chose to belittle, embarrass and humiliate the Plaintiff in the process.")). Moreover, plaintiff testified he had a history of prior incidents with Lt. Falco. According to plaintiff, Lt. Falco beat him in 2009, they "got into an altercation in 2009," and Lt. Falco called him racial slurs in 2014. (Pl. Dep. at 34).

Second, plaintiff was handcuffed and Lt. Falco and Officer Levine escorted him to the showers in the intake area of the facility for another attempt at a search. (Doc. #33-4 at ECF 1; Pl. Dep. at 24–27). Video evidence shows several male correction officers escorting plaintiff to a shower stall. (See Doc. #51 (Kollector03 - Intake Shower - 05.17-17 10.01.03.mp4; Kollector07 - Intake Shower - 05-17-17 10.01.13.mp4)). A few seconds after he goes into the shower stall, the officers are handed plaintiff's clothes. The video next shows the officers looking into the stall and gesturing at plaintiff. Then, one officer enters the stall and plaintiff runs out, naked, and is restrained by four officers, who then place him in a different stall. The officers wait outside the stall for several minutes, and occasionally look into the stall. Plaintiff

3

emerges, dressed, and speaks with a female staff person and then returns to the shower stall. Five officers observe plaintiff, appear to give him instructions and have discussions with him, and look into the stall for several minutes. An officer then hands plaintiff his clothing and officers escort him out of the area. The videos do not show the inside of either shower stall.

According to defendants, Lt. Falco, Sgt. Carr, and Officer Levine each ordered plaintiff multiple times to bend over and spread his butt checks, but each time plaintiff refused to do so. (Doc. #33-4 at ECF 1). Lt. Falco warned plaintiff if he continued to refuse orders, he would administer pepper spray. (Id.). Plaintiff still refused, and Lt. Falco administered a half-second burst of pepper spray from approximately one-to-three feet away. (Id. at ECF 1–4). In support of this account, defendants cite to contemporaneous reports by Lt. Falco; Sgt. Carr; Officer Levine; Officer Orbacz; and Officer Rutherford, who was on duty in the intake area at the time.

Plaintiff testified at his deposition that he was in the middle of undressing pursuant to Lt. Falco's orders when Lt. Falco administered pepper spray. (Pl. Dep. at 27–28).

Plaintiff, who has asthma and uses an inhaler, testified he suffered an asthma attack because of the pepper spray. (Doc. #33-8 at ECF 7; Pl. Dep. at 40). Defendants do not appear to dispute that plaintiff suffered an asthma attack, but their expert opines plaintiff's "respiratory symptoms . . . were very short-lasting and rapidly responsive to a single treatment of a rescue inhaler administered on-site." (Doc. #35 ¶ 7).

Third, plaintiff was taken by several officers to a holding cell, where the body search was completed. (Doc. #33-3 at ECF 9, 11–12, 15). Video evidence appears to show plaintiff being brought to a cell by several officers and then being locked in the cell. (See Doc. #51 (Kollector07 Intake Upper – 05-17-17 10.01.03.mp4; Kollector07 Intake Housing Upper Desk - 05-17-17 10.1.03.mp4)). Again, the videos do not show the search being conducted.

Plaintiff later underwent an X-ray and provided a stool sample. (Doc. #33-9 at ECF 11, 21–22). Defendants never found any synthetic marijuana or other drugs. (Doc. 33-3 at ECF 15).[4]

According to plaintiff, being searched was "humiliating" and "one of the most embarrassing life changing moments of my life." (Doc. #44 at ECF 3; Pl. Dep. at 29). Plaintiff testified at his deposition that, following the incident, "I wasn't able to sleep, I cried, I couldn't think, I couldn't function." (Pl. Dep. at 52).

## DISCUSSION

I.  Summary Judgment Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[5]

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See id. It is the moving party's burden to "establish[ ] the absence of any genuine issue of material fact." Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010) (per curiam).

---

[4] Defendants contend they found a defaced battery when searching plaintiff's cell. (Doc. #33-3 at ECF 10, 14, 17).

[5] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

5

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the [non-moving] party" on the issue on which summary judgment is sought, "summary judgment is improper." See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998). On summary judgment, however, evidence need not be "in a form that would be admissible at trial." Celotex Corp. v. Catrett, 477 U.S. at 324.

If a moving party offers video evidence "whose accuracy is unchallenged" in support of a motion for summary judgment, such evidence "should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to

believe the version advanced by the moving party." Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007). That said, "if the video evidence does not conclusively resolve material fact issues, summary judgment based on that evidence alone is not appropriate." Benny v. City of Long Beach, 2022 WL 2967810, at *10 (E.D.N.Y. July 27, 2022).[6]

Further, the Court may not evaluate the credibility of witness testimony on summary judgment; this assessment is exclusively the province of the jury. See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725–26 (2d Cir. 2010).

Finally, "it is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants, particularly where motions for summary judgment are concerned." Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016).

II. Motion for Summary Judgment

A. Fourth Amendment Claim

Defendants contend their searches of plaintiff were not unreasonable as a matter of law and they are entitled to summary judgment on plaintiff's Fourth Amendment claim.

The Court disagrees.

1. Legal Standard

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to a convicted prisoner's "right to bodily privacy." Harris v. Miller, 818 F.3d at 57. In other words, an unreasonable search of a prison inmate may violate the Fourth Amendment. See id.

---

[6] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

To determine whether a search is unreasonable, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Bell v. Wolfish, 441 U.S. 520, 559 (1979).

To evaluate whether the scope of a particular search, as opposed to a prison policy regarding searches, was reasonable, courts consider the type of search conducted and who conducted the search.  Harris v. Miller, 818 F.3d at 58–59.  As to the type of search, "[t]here are at least three types of searches that implicate an inmate's right to bodily privacy":  (i) "[a] strip search," which "generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities"; (ii) "[a] visual body cavity search," which "extends to visual inspection of the anal and genital areas"; and (iii) "[a] manual body cavity search," which "includes some degree of touching or probing of body cavities."  Id. at 58.  As to who conducted the search, courts look to the genders of the inmate and the officer performing the search, and have generally held that a search conducted by a person of a different gender than the inmate is more invasive than a search conducted by a person of the same gender.  Id. at 59.

To determine whether the manner in which a search was conducted was reasonable, courts consider whether it was "conducted in a professional manner."  Harris v. Miller, 818 F.3d at 59–60.

In evaluating whether a search was justified, courts consider whether the reason for the search is "vague" or "is supported by record evidence."  Harris v. Miller, 818 F.3d at 60.

And in looking at whether the place in which a search was conducted was reasonable, courts look to whether other officers or inmates were present during the search.  "[A] strip search or a body cavity search conducted in the presence of unnecessary spectators is less reasonable

than one conducted in the presence of only those individuals needed to conduct the search." Harris v. Miller, 818 F.3d at 62.

       2.    Application

Here, there are genuine factual disputes with respect to whether the searches of plaintiff were unreasonable and thus in violation of the Fourth Amendment.

First, the manner in which the searches were conducted is genuinely disputed. A "search conducted in a professional manner is more reasonable than one that is not." Harris v. Miller, 818 F.3d at 59–60. Defendants offer evidence plaintiff's searches were conducted in a professional manner. Specifically, Lt. Falco wrote in his report the day of the incident that the officers "remain[ed] professional and g[ave] [plaintiff] clear, concise directives." (Doc. #33-3 at ECF 40). Plaintiff, however, testified that, throughout the process he was threatened with pepper spray, he was not given any explanation for the search, and he was forced to bend over for long periods of time purely to humiliate him. (Pl. Dep. at 29, 34). The Court simply cannot credit the testimony of one witness over another, or determine the credibility of any witness, on summary judgment. Fincher v. Depository Tr. & Clearing Corp., 604 F.3d at 725–26. Moreover, the video evidence is not conclusive. The videos do not capture the areas where the searches were conducted, namely, plaintiff's cell, the inside of the shower stall, or the inside of the holding cell. Thus, the Court cannot conclude the searches were conducted in a professional manner as a matter of law.

Second, there are factual disputes as to whether the searches were justified. Defendants offer record evidence that the searches were conducted because an officer received a tip that plaintiff possessed synthetic marijuana "and might have the drug stored up his rectum." (Doc. #33-3 at ECF 40). But plaintiff suggested at his deposition that Lt. Falco may have been

motivated by prior incidents between the two. (Pl. Dep. at 34–35). Moreover, it is undisputed no synthetic marijuana was recovered from plaintiff despite the searches performed, X-ray conducted, or stool sample taken from him.

Third, there are factual disputes as to whether the plaintiff's search was conducted in a reasonable place. The parties agree, and the video evidence shows, that multiple officers were present during the search. Plaintiff testified multiple times that he felt humiliated having to undress and bend over in the presence of so many officers. (See, e.g., Pl. Dep. at 20–22, 29). Defendants offer evidence suggesting that plaintiff was acting erratically and being defiant and thus many officers were needed. Thus, it is disputed whether plaintiff's searches were conducted in a reasonable place.

In addition, it is undisputed defendants conducted an invasive search, which suggests the search was unreasonable and weighs against granting defendants' motion. Although defendants characterize the search as a "strip search" (see Doc. #38, at 4–9), it appears from the evidence that defendants conducted, or attempted to conduct, visual body cavity searches—the parties agree plaintiff was directed to undress and that officers visually inspected his anal area. "Regardless of who performs the search, a visual body cavity search . . . is invasive." Harris v. Miller, 818 F.3d at 58. And although both plaintiff and the officers conducting the searches were male, the Court cannot conclude as a matter of law that the scope of the searches was reasonable.

Accordingly, defendants' motion for summary judgment on plaintiff's Fourth Amendment claim must be denied.

B.   Eighth Amendment Claim

Defendants also contend they are entitled to summary judgment on plaintiff's excessive-force claim.

10

The Court disagrees.

      1.      <u>Legal Standard</u>

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Courts have construed the Eighth Amendment to protect prison inmates' right to be free from the use of excessive physical force by prison officials. <u>Whitley v. Albers</u>, 475 U.S. 312, 320–21 (1986).

To state a <u>prima facie</u> excessive force claim, a plaintiff must establish an objective component and a subjective component. <u>Wright v. Goord</u>, 554 F.3d 255, 268 (2d Cir. 2009).

To establish the objective component, a plaintiff must show "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." <u>Wright v. Goord</u>, 554 F.3d at 268 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)). In determining whether conduct was objectively harmful enough, courts must consider the harm done in light of "contemporary standards of decency." <u>Id</u>. (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)). "[W]hen prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" <u>Id</u>. at 268–69 (quoting <u>Hudson v. McMillian</u>, 503 U.S. at 9).

To establish the subjective component of an excessive-force claim, a plaintiff must show "the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." <u>Wright v. Goord</u>, 554 F.3d at 268. "The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Scott v. Coughlin</u>, 344 F.3d 282, 291 (2d Cir. 2003).

11

> To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."

Id. (quoting Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993)).

      2.    Application

Here, it is genuinely disputed whether Lt. Falco used force in a good-faith effort to restore discipline or maliciously to cause plaintiff harm.

The administration of pepper spray "has a variety of incapacitating and painful effects and, as such, its use constitutes a significant degree of force." Tracy v. Freshwater, 623 F.3d 90, 98 (2d Cir. 2010). Plaintiff testified at his deposition that he was already complying with orders to undress when Lt. Falco administered pepper spray, which suggests Lt. Falco was not acting with a good-faith effort to restore discipline. Further, the video evidence suggests plaintiff promptly undressed when escorted to the shower stall in the intake area, which in turn supports plaintiff's account. In contrast, defendants cite to evidence, in the form of contemporaneous written reports by Sgt. Carr and Officer Levine, that pepper spray was administered in response to plaintiff becoming "increasingly defiant" (Doc. #33-3 at ECF 8) and only after plaintiff was warned multiple times that failure to comply with defendants' orders would result in administration of pepper spray, which suggests the opposite. (Id. at ECF 12). Again, the Court cannot credit the testimony of one witness over another, or determine the credibility of any witness, on summary judgment. Fincher v. Depository Tr. & Clearing Corp., 604 F.3d at 725–26. In other words, a reasonable jury could credit plaintiff's testimony and conclude Lt. Falco administered pepper spray to plaintiff when he was already complying with the officers' directions, and thus administered pepper spray "to cause harm maliciously and sadistically."

Wright v. Goord, 554 F.3d at 268 (quoting Hudson v. McMillian, 503 U.S. at 8).  Therefore, there are disputes of fact with respect to both components of plaintiff's excessive-force claim.

Accordingly, defendants' motion for summary judgment on plaintiff's excessive-force claim must be denied.

C. Qualified Immunity

Defendants also contend plaintiff's claims should be dismissed on the basis of qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996).  "Where a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment on the basis of qualified immunity must fail."  Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003).

Here, there are genuine factual disputes with respect to whether defendants' searches of plaintiff were unreasonable and whether Lt. Falco used excessive force when he administered pepper spray.  Plaintiff's Fourth Amendment right to be free from unreasonable searches and his Eighth Amendment right to be free from the use of excessive force were clearly established at the time of the incident.  Further, in light of the factual disputes outlined above, defendants have

13

not established it was objectively reasonable for them to believe their conduct did not violate those rights as a matter of law.

Accordingly, plaintiff's claims will not be dismissed on the basis of qualified immunity.

## CONCLUSION

The motion for summary judgment is DENIED.

The Court will conduct a case management conference on **October 7, 2022, at 12:30 p.m.**, at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will make to settle this case.

The conference shall proceed by telephone. At the time of the scheduled conference, plaintiff and defense counsel shall use the following information to connect by telephone:

**Dial-In Number**: **(888) 363-4749 (toll free) or (215) 446-3662**
**Access Code**: **1703567**

It is defense counsel's responsibility to make prior arrangements with the appropriate facility to make plaintiff available by telephone for the conference.

The Clerk is instructed to terminate the motion. (Doc. #32).

The Clerk is further instructed to place Docket Entries 33-9, 33-10, and 33-11 under seal. The documents should be viewable only by Court personnel and the parties.[7]

---

[7] These exhibits contain plaintiff's medical records, which the Court sua sponte concludes should be placed under seal to protect plaintiff's privacy. See, e.g., Toolasprashad v. Toolashrashad, 2021 WL 4949121, at *3 (E.D.N.Y. Oct. 25, 2021) ("Courts in this Circuit routinely seal medical records . . . to protect the plaintiff's privacy interest in those records.").

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: August 25, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge